UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A.G.C.,[1]<br><br>  Petitioner,<br><br>  v.<br><br> WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al.,<br><br>  Respondents. | No. 1:26-cv-03044-TLN-CKD<br><br> A# 220-731-795<br><br><br> **ORDER** |

This matter is before the Court on *pro se* Petitioner Miguel A.G.C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to the lawfulness of his civil immigration detention without a hearing.  Petitioner has resided in the United States for over four years, since his entry in December 2021.  (ECF Nos. 1 at 4; 7-1 at 2.)  Petitioner states he came to this country to seek protection from political persecution.  (ECF No. 1 at 4.)  Initially, immigration authorities detained Petitioner, processed him, and instituted removal proceedings "under section 240 of the Immigration and Nationality Act."  (*Id.* at 30; ECF No. 7-2 at 1.)  On January 25, 2022, Petitioner was released into the United States on his own recognizance to pursue his asylum application.  (*See* ECF No. 1 at 30–32, 35, 39.)  Petitioner has applied for asylum and withholding of removal; those applications are still pending with the government.  (*Id.* at 48–61.)

Petitioner has established deep ties to his community.  He lives with his family, including his wife, stepson, and his three-year-old daughter.  (*Id.* at 2, 66.)  His community also includes other relatives, like his sister, and friends.  (*Id.* at 5, 12.)  Additionally, Petitioner has maintained gainful employment as a chef.  (*Id.* at 12.)

Petitioner is not subject to a final order of removal.  (*Id.* at 17–18.)  He also has no criminal convictions.  (*See* ECF No. 7-3.)

However, on January 3, 2026, local law enforcement arrested Petitioner; thereafter, the local prosecutor declined to charge Petitioner.  (ECF Nos. 1 at 41, 42; 7-3 at 6.)  Around January 8, 2026, Petitioner posted bond.  (ECF No. 1 at 41.)  However, rather than releasing Petitioner, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody.  (*See id.*)  Thereafter, ICE transferred Petitioner from his home state to Texas, then to Arizona, and now he is detained in California.  (*Id.* at 5.)

Petitioner states his children have suffered emotional distress in his absence.  (*Id.* at 5.)  Petitioner states he also suffers from depression and anguish and his health has deteriorated due to inadequate nutrition and medical care while in immigration custody.  (*Id.*)

Petitioner has now been detained for over four months.  Respondents have not provided

---

[2]   The facts are not disputed.

Petitioner with any bond hearing or custody determination hearing in that time. (ECF No. 1 at 2, 5.) Petitioner challenges his civil detention without a hearing through the instant Petition.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention without a hearing violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause. (ECF No. 1 at 8–9.) Respondents contend Petitioner is only entitled to the process provided by statute and he is subject to mandatory detention without a hearing. (ECF No. 7.) The Court addresses each claim in turn.

### A.    Immigration and Nationality Act

Petitioner alleges his detention is governed by § 1226(a), which provides for a bond hearing.[3] (ECF No. 1 at 8.) Respondents argue Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2) without a bond hearing. (ECF No. 7 at 2.)

The INA generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings. The expedited removal process is governed by § 1225. The standard removal process, "section 240

---

[3]    Unless otherwise noted, citations to statute refer to sections of Title 8 of the U.S. Code.

3

proceedings," is codified at § 1229a. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025). For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226(a) and (c). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Under § 1226(a), the government has broad discretion whether to release or detain the individual. *Id.* Section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, § 1225(b)(2) mandates detention during expedited removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Here, Petitioner clearly falls under standard removal proceedings. The charging document, provided by Respondents, states Petitioner is "in removal proceedings under section 240 of the [INA]." (ECF No. 7-2 at 1.) Because Petitioner is in standard removal proceedings, rather than expedited removal proceedings, Petitioner's detention is governed by § 1226(a) rather than § 1225(b). *See Rodriguez Diaz v. Garland*, 53 F.4th at 1196. These two statutes cannot be applied simultaneously. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025).

Moreover, the vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who were released into the United States by immigration authorities. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). Indeed, "Respondents acknowledge the cases contrary in this District" (ECF No. 7 at 3), yet they offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds

4

Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision, including a bond hearing, at minimum.  Respondents have not provided Petitioner with any such bond or custody hearing in over four months of detention.  Therefore, Respondents have violated 8 U.S.C. § 1226(a).

B.     Fifth Amendment Violation

Petitioner alleges his detention without a hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–9.)  Respondents argue (1) Petitioner is only entitled to the process conferred by statute under 8 U.S.C. § 1225(b)(2) and (2) Petitioner does not have a liberty interest because Petitioner encountered law enforcement.  (ECF No. 7 at 2–3.)  The Court disposed of the first argument above and need not address it again.  The Court now considers whether Petitioner has a liberty interest protected by due process and what procedures are owed.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.  *Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain

a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at \*8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  Petitioner was released into the United States and, since that time, he has established ties with his community, started a family, pursued immigration relief, and maintained gainful employment nourishing his community as a chef.  Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).  Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents contend Petitioner's encounter with law enforcement terminated his grant of release.  (ECF No. 7 at 3.)  However, Respondents provide no authority, and this Court is aware of none, establishing that an individual's liberty interest is stripped at the moment he encounters law enforcement.  Even if such an encounter were a violation of the terms of Petitioner's release — a supposition posed by Respondents — it does not follow that Petitioner's liberty interest is then immediately and automatically terminated.  *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (similarly noting that "even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing."); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at \*6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum applicant improper even if she violated the conditions of her release because she was not a danger to society or a flight risk).

In the present context, Petitioner's conditional release from immigration custody is

6

analogous to parole, and it has long been recognized that a parolee's liberty interest is lost at the time parole is revoked, not before. *Moody v. Daggett*, 429 U.S. 78, 87 (1976); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."). "The Government's assertion that a parole grantee is entitled to no due process procedural protections prior to recission of his parole grant is untenable." *Drayton v. McCall*, 584 F.2d 1208, 1214 (2d Cir. 1978). The Court thus rejects Respondent's assertion that Petitioner has no liberty interest by reason of an encounter with law enforcement when there has been no determination that he has in fact violated the terms of his release nor has a decision been made to rescind his release for that reason. *See Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (rejecting the Government's proposition that a petitioner's DUI arrest justifies re-detaining him without due process); *Rodriguez Cruz v. Warden of the Golden State Annex*, No. 1:26-CV-00348-DAD-SCR, 2026 WL 453561, at *2 (E.D. Cal. Feb. 18, 2026), report and recommendation adopted, No. 1:26-CV-00348-DAD-SCR, 2026 WL 564588 (E.D. Cal. Feb. 27, 2026) (same). The due process concerns are particularly acute here, where local authorities concluded prosecution of charges against Petitioner were unwarranted, and charges were dropped. (ECF No. 1 at 42.)

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty

7

that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner has now been detained for over four months, separated from his family and community, unable to work, without any opportunity to be heard as to his detention.  Accordingly, this factor weighs strongly in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received any opportunity to be heard as to the justification of his detention, either pre- or post-deprivation of liberty.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to an order of removal; his immigration proceedings are still pending.  At the time immigration authorities released Petitioner, they would have determined him not to be a danger or a flight risk.  Respondents do not suggest that finding should be altered.  Nor do Respondents claim that Petitioner is a danger to the public or a flight risk.  Petitioner has no criminal convictions, nor any pending criminal matters.  Therefore, the risk that he is being detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under 8 U.S.C. § 1226(a), governing Petitioner's detention.  Any delay in detention (if justified) for the time to provide notice and a

hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

At a minimum, due process required notice and a hearing as to Petitioner's detention. Respondents did not provide Petitioner a pre-deprivation or post-deprivation hearing in over four months of detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.    CONCLUSION

Respondents detained Petitioner in violation of federal law and the Fifth Amendment. Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[4]

2. Respondents must IMMEDIATELY RELEASE Petitioner Miguel A.G.C. (A# **220-731-795**) from custody under the same conditions as his 2022 release. At the time of release, Respondents must return all of Petitioner's documents and possessions and **provide him a copy of this Order**.

3. Respondents must file a **notice of compliance** with this Order by **May 21, 2026.**

4. Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

///

---

[4] Petitioner also seeks an award of attorneys' fees and costs pursuant to the Equal Access to Justice Act. (ECF No. 1 at 10.) The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

9

5. The Clerk of the Court shall serve a copy of this Order on **California City Detention Facility**.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE